In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00400-CR**
_____

**THE STATE OF TEXAS, Appellant**

**V.**

**ESTER ABOYTES ANDERSON, Appellee**

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 12-10-11067-CR

**OPINION**

Ester Aboytes Anderson, appellee, was charged by indictment with injury to a child and driving while intoxicated with a child passenger under the age of fifteen. *See* Tex. Penal Code Ann. §§ 22.04, 49.04 (West Supp. 2014), § 49.045 (West 2011).

The indictment arose out of a one-car traffic accident that occurred on October 16, 2012. Anderson was the driver of the vehicle. Her passenger was a

1

two-year-old child. Both Anderson and the child were injured in the accident. Anderson was taken from the scene of the accident directly to a hospital where a Texas Department of Public Safety (DPS) Trooper interviewed her, placed her under arrest for driving while intoxicated, and obtained a warrantless non-consensual blood draw to determine her blood alcohol content. Anderson filed a motion to suppress the evidence obtained from the blood draw. After conducting a hearing, the trial court entered an order granting the motion and suppressing the evidence. The State filed this appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5), (e) (West Supp. 2014). We affirm the trial court's ruling.

MOTION TO SUPPRESS

In her motion to suppress, Anderson asserted that the blood specimen evidence was seized in violation of her Fourth Amendment right to be free from an unreasonable search and seizure. The State argued that the blood draw was done pursuant to section 724.012 of the Texas Transportation Code, and that there were exigent circumstances. *See* Tex. Transp. Code Ann. § 724.012 (West 2011). Anderson argued that, absent exigent circumstances, an officer cannot obtain a blood draw from a defendant without a warrant or without that person's consent, and further that, pursuant to *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), the

2

implied consent provision of section 724.012 is unconstitutional, and that there were no exigent circumstances.[1]

SUPPRESSION HEARING

At the suppression hearing, the State presented evidence from four witnesses. DPS Trooper Chapman, DPS Sergeant Barnhill, and an Assistant District Attorney (ADA), testified live at trial.[2] DPS Trooper Martinez testified by affidavit.

Trooper Chapman was the first trooper to arrive at the scene of the accident. He arrived at approximately 4:40 to 4:45 p.m., and he described the scene as "chaotic." When he arrived, firemen, a paramedic, and two constables were already at the scene. Chapman testified that Anderson's vehicle appeared to have crashed into a tree located in the median of the road. The driver of the vehicle was not at the scene when he arrived; she had already been transported to the hospital. The child passenger had been taken to another hospital. During the search of Anderson's vehicle, the DPS officers recovered a receipt from inside of the vehicle, which "showed the purchase of the alcohol that [the officers] believed was

---

[1]The State's brief conflates sections 724.011 and 724.012(b). *See* Tex. Transp. Code Ann. §§ 724.011, 724.012 (West 2011). However, the statutes are distinct in content.

[2]Two assistant district attorneys met Trooper Chapman at the scene but only one testified at the hearing.

3

on the floorboard." Trooper Chapman explained that they found beer inside the vehicle. And, one can of beer was open.

According to the ADA, they also had someone else on standby to assist in locating and notifying a judge to remain available, in the event a warrant might have been required. The ADA testified that he assisted in the preparation of the search warrant affidavit for the vehicle's data recording device ("black box" or "CDR"), and they sent the affidavit to the district attorney's office for presentment to the judge. The record indicates that at 6:01 p.m. an attorney at the district attorney's office faxed the "Application for a Court Order" for the black box to the judge. At 6:02 p.m., the judge faxed the court order back to the district attorney's office, thereby allowing the State to download and retrieve data from the black box. By 6:02 p.m., Trooper Chapman received the court order for the black box. Troopers completed the download of the data from the black box. The ADA also testified that "at some point we could have gotten" a search warrant for a blood draw, "[b]ut by the time we had--by the time we had all of the information that we would need, we were approaching a point where the relevance or the validity of that evidence would be questioned."

The State's "Application for a Court Order" regarding the black box contained details about the accident, the driver, and the passenger, as well as

4

investigative details obtained by law enforcement. As reflected in the application, the information from the scene of the accident indicated that the passenger in the vehicle was a two-year-old child, that the driver was suspected of driving under the influence of alcohol, and that the child had been injured. The black box application also contained the following details (gathered by Trooper Martinez) relating to his interview and observation of Anderson at the hospital: a "strong odor of an alcoholic beverage on [Anderson's] breath," "red-bloodshot eyes," "confused demeanor," Anderson's admission of consumption of a six-pack of beer before the crash, and Trooper Martinez's arrest of Anderson for DWI.

Sergeant Barnhill testified he was dispatched to the accident scene, which he was told involved a possible child fatality. The initial information Barnhill received at the scene was that alcohol was possibly a factor in the crash. He testified that by the time he arrived at the scene, the driver (Anderson) "had already been transported by EMS" to the hospital. Sergeant Barnhill sent Trooper Martinez to the hospital to interview Anderson and investigate the possibility of intoxication. In explaining the Montgomery County search warrant process, Sergeant Barnhill indicated that the county has an attorney in the district attorney's office on call "24/7" and that the district attorney has a vehicle crime unit that also responds to

5

and assists the officers in obtaining search warrants. He testified that he did not make any attempt to obtain a search warrant for the blood draw.

Trooper Martinez testified by affidavit. Martinez was dispatched to the hospital where Anderson had been taken, and he arrived at the hospital at 4:54 p.m. He was told to speak with Anderson to "see if she was intoxicated and also find out what happened." Anderson told Martinez that she was on her way back to Conroe and she did not remember where she was coming from. Martinez noted that she appeared intoxicated, and that when he first spoke with her, she had "blood shot eyes" and a "strong odor of an alcoholic beverage coming from her breath[.]" She admitted to Martinez that she had purchased alcohol and had been drinking alcohol before the crash. In the application for the black box, the State described an alleged admission by Anderson that she drank a six-pack of beer from noon until just before the time of the wreck. Martinez indicated in his affidavit that he was only able to perform one field sobriety test, the Horizontal Gaze Nystagmus (HGN) test, on her "due to possible injuries" from the accident. Martinez noted the HGN test yielded clues that Anderson was intoxicated, and the hospital staff advised him that Anderson "seemed to have been drinking." "Based on all the facts of the crash and signs of possible [i]ntoxication," Martinez determined that Anderson was intoxicated.

At 5:31 p.m., Trooper Martinez read Anderson the statutory DWI warning, as reflected in the DIC-24 form,[3] and requested that she provide a specimen of her blood. Anderson refused to consent to the blood draw. The trooper explained to Anderson that because a child was injured in the accident, a mandatory blood draw was required. A registered nurse drew Anderson's blood at approximately 5:35 p.m.

As a further explanation of why he did not seek to obtain a warrant for the blood draw, Trooper Martinez stated in his affidavit that he "was worried about the rapid dissipation of alcohol from the defendant's blood and [he] also believed that she would be taken by the doctor[]s for medical testing and that [he], therefore, would lose that evidence." Martinez stated that "[t]he scene was hectic and no one was present at the hospital to assist [him] in drafting a warrant, locating a judge, and presenting that warrant to the judge."

ISSUES ON APPEAL

The State contends as follows: "[T]he trial court erred when it granted the defense's motion to suppress blood evidence because it improperly interpreted

---

[3]The DIC-24 is a standard form used to request breath or blood specimens from suspected intoxicated drivers. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.). The form contains language consistent with the provisions outlined in section 724.015 of the Transportation Code. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2014).

7

*Missouri v. McNeely*, 133 S.Ct. 1552 (2013), erred in concluding that no exigent circumstances existed, and erred in concluding that Texas Transportation Code § 724.012 (West 2011) is unconstitutional." (footnote omitted). The State also argues that the good faith exception to the exclusionary rule applies in this case, and the officers were entitled to rely on the law in existence at the time of the offense. We hold that the trial court did not err in granting the motion to suppress, or in concluding there were no exigent circumstances, and the good faith exception does not apply to the facts in this case.

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion.[4] *Id*. We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on the application of the law to questions of fact and to mixed questions of law and

_____

[4]In the State's brief, the State indicates that this Court is not required to defer to every factual finding made by the trial court, but the State does not challenge any specific finding of fact.

8

fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id*. For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a *de novo* review.[5] *Id*.

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must view the evidence in the light that is most favorable to the trial court's ruling, and we are obligated to uphold the trial court's ruling on a motion to suppress if that ruling is supported by the record and if it is correct under any applicable theory of law. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011); *Ross*, 32 S.W.3d at 855-56.

---

[5]The trial court made the following conclusions of law:
> 1. There were no exigent or extenuating circumstances in this case that justified the warrantless blood draw.
> 2. *Missouri v. McNeely*, 133 S.Ct. 1552 (2013) invalidates the Texas implied consent statute, Texas Transportation Code § 724.012.
> 3. The blood specimen in this case was taken without [a] warrant.
> 4. The blood specimen in this case was an invalid, warrantless search and seizure.

DISCUSSION

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (citing *Kentucky v. King*, 131 S.Ct. 1849, 1856-57 (2011)). "The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). "Even if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." *Maryland v. King*, 133 S.Ct. 1958, 1970 (2013).

The Court of Criminal Appeals has stated that the exceptions to the requirement of a search warrant include "voluntary consent to search, search under exigent circumstances, and search incident to arrest." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). Once the accused establishes that the search was conducted without a warrant, it is the State's burden to show that the warrantless search falls within one of these exceptions. *State v. Woodard*, 341 S.W.3d 404, 412

(Tex. Crim. App. 2011). Because there was no search warrant for the blood draw performed on Anderson, the State had the burden of proof to establish an exception to justify the warrantless search and seizure of Anderson's blood. *Id*. To justify the blood draw from Anderson, the State relies on the implied consent and mandatory blood draw provisions in the Texas Transportation Code, on a claim of exigent circumstances, and on what the State describes as a good faith exception to the exclusionary rule.

UNITED STATES SUPREME COURT CASES

In *Schmerber v. California*, 384 U.S. 757 (1966), the United States Supreme Court examined Fourth Amendment challenges to a warrantless blood draw taken from a driver suspected of driving under the influence of alcohol. Schmerber was injured in the accident and taken to the hospital. *Id*. at 758-59. While he was at the hospital receiving treatment, the police arrested him for driving under the influence of alcohol. *Id*. at 758. The police had the hospital take a blood sample. *Id*. Over Schmerber's objection, the blood-draw results were admitted into evidence. *Id*. at 759. The Supreme Court concluded that the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of

11

evidence[.]'" *Id*. at 770 (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)).

In *Missouri v. McNeely*, the United States Supreme Court examined the analysis in *Schmerber* and concluded, without overruling *Schmerber*, that the "natural metabolization of alcohol in the bloodstream" does not present a *per se* exigency that "justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 133 S.Ct. at 1556. The Court noted that a "variety of circumstances may give rise to an exigency sufficient to justify a warrantless search" when "'there is compelling need for official action and no time to secure a warrant.'" *Id*. at 1558-59 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Some examples of exigency include hot pursuit, entering a building to put out a fire, entering a home to aid an occupant, or, in some contexts, preventing destruction of evidence. *Id*. To determine whether exigent circumstances justify a warrantless search, courts must examine the "totality of the circumstances" and must analyze the facts on a case-by-case basis. *Id*. at 1556, 1563, 1566.

In reaching its conclusion, the Court recognized that advances in technology and procedure now allow officers--often coordinating directly with prosecutors and the court--to obtain warrants in an expedited fashion. *Id*. at 1561-62. Moreover,

circumstances may indicate that "an officer can take steps to secure a warrant while the suspect is being transported[.]" *Id*. at 1561. "In such a circumstance, there would be no plausible justification for an exception to the warrant requirement." *Id*. Notably, the Court emphasized that the officer in question made no attempt to secure a warrant or to outline other factors as to why he faced exigent circumstances. *Id*. at 1556-67. He admitted that he knew there was a prosecuting attorney on call if assistance was needed to obtain a warrant. *Id*. at 1567. However, the officer decided not to seek a warrant because he felt it was not "legally necessary." *Id*.

In *McNeely*, the State sought a "*per se* rule for blood[-]testing in drunk-driving cases." *Id*. at 1560. The Court rejected the State's argument and stated that "it does not follow that we should depart from careful case-by-case assessment of exigency and adopt the categorical rule proposed by the State and its *amici*." *Id*. at 1561. "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id*.

In *Maryland v. King*, decided a few months after *McNeely*, the United States Supreme Court considered the application of the Fourth Amendment to a DNA

buccal swab procedure conducted at a police station, after the accused was arrested (with probable cause) for a dangerous offense. 133 S.Ct. at 1967-70, 1978. In *King*, the Court considered the buccal swab procedure in the context of a search incident to an arrest during the "'routine administrative procedure[s] at a police station house incident to booking and jailing the suspect[.]'" *Id*. at 1971 (quoting *Illinois v. Lafayette*, 103 S.Ct. 2605 (1983)). The Court contrasted the buccal swab with the venipuncture to draw blood, noting that the former "involves but a light touch on the inside of the cheek[,]" while the latter requires a puncture of the skin. *Id*. at 1969, 1979.

Continuing further, the Court stated the fact that "an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term." *Id*. at 1969. The Court noted that the background of the Maryland DNA Collection Act and the action of collecting DNA through the use of a buccal swab "is not subject to the judgment of officers whose perspective might be 'colored by their primary involvement in 'the often competitive enterprise of ferreting out crime.''" *Id*. at 1970 (quoting *Terry v. Ohio*, 392 U.S. 1, 12 (1968) (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). The application of traditional reasonableness standards requires the court to weigh the "'promotion of legitimate governmental interests'" against the "'degree to which [the search]

14

intrudes upon an individual's privacy.'" *Id.* (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The governmental interest in identification of the suspect is substantial, and the intrusion of a cheek swab to obtain a DNA sample is a minimal intrusion. *Id*. at 1977, 1980. "When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Id*. at 1980.

According to the Court, the factual context and nature of the buccal cheek swab in *King* is "a far more gentle process than a venipuncture to draw blood . . . although it can be deemed a search within the body of the arrestee, it requires no 'surgical intrusions beneath the skin.'[citation omitted]" The fact that an intrusion is negligible is of central relevance to determining reasonableness, even though the intrusion may be a search as defined by law. *See id.* at 1969. In contrast to the buccal swab procedure in *King*, taking blood to determine the level of intoxication or the influence of drugs is not part of a routine administrative or identification procedure at a police station, and it includes necessary protocols and potential health issues associated with extracting blood that may not exist with the use of a buccal swab for DNA collection.

More recently, in *Riley v. California*, the Court issued its opinion which involved a warrantless search of cell phones. 134 S.Ct. 2473 (2014). Each search was incident to a lawful arrest and the State of California argued that the search of the cell phones fell within the "search incident to arrest" doctrine, a recognized exception to the warrant requirement. *Id.* at 2480-82. The Court examined the scope of the "search incident to arrest[,]" and determined how it "applies to modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id.* at 2484. The Court analyzed the basis for the "search incident to arrest" doctrine under a trilogy of related precedents that set forth the rules governing such searches: *Chimel v. California*, 395 U.S. 752 (1969) (search incident to arrest limited to the area within the suspect's immediate control and justified by the interests of an officer in his own safety and prevention of destruction of evidence), *United States v. Robinson*, 414 U.S. 218 (1973) (search incident to arrest applied to a custodial arrest and a cigarette pack taken from suspect), and *Arizona v. Gant*, 556 U.S. 332 (2009) (search incident to arrest applies to search of automobile compartment within reach of suspect allowed when the suspect is unsecured, or it is reasonable to believe evidence of the crime for which the arrest was made might be found in the car). *See Riley*, 134 S.Ct. at 2483-

84. The Court concluded that the search of the cell phones did not fit within the parameters of the "search incident to arrest" doctrine as outlined in *Chimel*, *Robinson*, and *Gant,* and it held that a "warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id*. at 2493. "A warrant ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Id*. at 2482 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)). Chief Justice Roberts delivered the opinion of the Court, in which Justices Scalia, Kennedy, Thomas, Ginsberg, Breyer, Sotomayor, and Kagan, joined. *Id.* at 2480. Justice Alito filed an opinion concurring in part. *Id.* at 2495. As noted by the Court,

> [a]bsent more precise guidance from the founding era, we generally determine whether to exempt a given type of search from the warrant requirement "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Such a balancing of interests supported the search incident to arrest exception in *Robinson,* and a mechanical application of *Robinson* might well support the warrantless searches at issue here.
>
> But while *Robinson*'s categorical rule strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to digital content on cell phones. On the government interest side, *Robinson* concluded that the two risks identified in *Chimel*—harm to officers and destruction of evidence—

17

are present in all custodial arrests. There are no comparable risks when the search is of digital data. In addition, *Robinson* regarded any privacy interests retained by an individual after arrest as significantly diminished by the fact of the arrest itself. Cell phones, however, place vast quantities of personal information literally in the hands of individuals. A search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*.

We therefore decline to extend *Robinson* to searches of data on cell phones, and hold instead that officers must generally secure a warrant before conducting such a search.

*Id*. at 2484-85.[6]

*Schmerber*, *McNeely*, and *Riley* remind us that we should carefully guard against the use of *per se* exceptions to the Fourth Amendment. And, the overarching test we must apply is one that examines the "totality of the circumstances" in each case to determine the reasonableness of the search.

TEXAS IMPLIED CONSENT AND MANDATORY BLOOD DRAW PROVISIONS

In the case now before us, the State argues that the trial court erred in granting Anderson's motion to suppress because no warrant was required pursuant

---

[6]The defendants in *Riley* conceded that the "officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant." *Riley v. California*, 134 S.Ct. 2473, 2486 (2014). The Court noted that there were several ways the police could still have prevented the remote swiping or destruction of evidence by turning the cell phone off or taking out the battery. *Id*. at 2487; *cf. State v. Granville*, 423 S.W.3d 399, 417 (Tex. Crim. App. 2014) ("[A] citizen does not lose his reasonable expectation of privacy in the contents of his cell phone merely because that cell phone is being stored in a jail property room.").

18

to the implied consent and mandatory blood draw provisions contained in the Texas Transportation Code. While section 724.011 deals with "implied consent," Anderson expressly refused to consent and the officer explained to her that he was going to take her blood because she was driving while intoxicated and there was an injury to a child. *See* Tex. Transp. Code Ann. § 724.012(b)(2). We examine the State's reliance upon the statutory provisions in question in light of the overriding importance of the rights outlined in the Fourth Amendment and *McNeely*.

Texas Transportation Code Section 724.011, the implied consent statute, provides in part as follows:

> § 724.011. Consent to Taking of Specimen
> (a) If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, . . . while intoxicated, . . . the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.
>   . . . .

Tex. Transp. Code Ann. § 724.011(a) (West 2011). The implied consent referenced in section 724.011 may be withdrawn by the accused driver but may have consequences as outlined in section 724.035 of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 724.035 (West 2011). Section 724.035 expressly states

19

that a person retains the right, subject to automatic suspension of his or her license, to refuse to provide a specimen. *Id.*

In comparison to Section 724.011, Section 724.012, which is entitled "Taking of Specimen," provides that "[o]ne or more specimens of a person's breath or blood *may* be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person: . . . while intoxicated was operating a motor vehicle in a public place. . . ." Tex. Transp. Code Ann. § 724.012(a) (emphasis added). Under subsection 724.012(b), the officer, under certain specified circumstances, "*shall* require the taking of a specimen of the person's breath or blood" if the person refuses the officer's request for the blood draw. *See id.* § 724.012(b) (emphasis added). We set out section 724.012(b) below:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
> (1) the person was the operator of a motor vehicle . . . involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
> (A) any individual has died or will die;
> (B) an individual other than the person has suffered serious bodily injury; or

20

(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment;

(2) the offense for which the officer arrests the person is an offense under Section 49.045, Penal Code [DWI with a child passenger]; or

(3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:

(A) has been previously convicted of or placed on community supervision for an offense under Section 49.045, 49.07, or 49.08, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections[.]

. . . .

*Id.* The indictment in this case alleges that Anderson was operating a motor vehicle in a public place, while intoxicated, and caused bodily injury to a passenger younger than fifteen. If true, these allegations satisfy at least one or more of the provisions contained in section 724.012(b). Once the officer formed a reasonable belief of facts established in one or more of the subparts in section 724.012(b), the officer "shall require the taking of a specimen of the person's breath or blood[.]"

*Id.*

Simply because the statute requires the taking of a specimen of the person's breath or blood, however, does not end our inquiry. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrong doing . . . reasonableness generally requires the obtaining of a judicial warrant[.]" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995). "In the absence of a warrant,

21

a search is reasonable only if it falls within a specific [recognized] exception to the warrant requirement." *Riley*, 189 L.Ed.2d at 439. There is no language in section 724.012(b) that authorizes a police officer to take the specimen without a warrant. *See McGruder v. State*, No. 10-13-00109-CR, 2014 Tex. App. LEXIS 9022, at *7 (Tex. App.—Waco Aug. 14, 2014, no pet. h.) (mem. op.). Furthermore, there is no indication in the plain language of the statute that the circumstances outlined in section 724.012(b) would constitute "exigent circumstances" or any other recognized exception. *See id*. at **7-8; *State v. Villarreal*, No. 13-13-00253-CR, 2014 Tex. App. LEXIS 645, at *35 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted) (mem. op.).

In its brief on appeal, the State also argues that *Beeman v. State*, 86 S.W.3d 613, 615-16 (Tex. Crim. App. 2002), a pre-*McNeely* case, supports the State's position. We disagree. *Beeman* is inapposite to the matter now before us because, when the defendant in *Beeman* refused a breath test, the officer had already obtained a search warrant. *Beeman*, 86 S.W.3d at 614. *Beeman* did not fall under any of the prescribed circumstances set out in section 724.012(b). *Id.* at 614-15. Rather, Beeman argued he could not be required to submit to a blood draw *even with a search warrant*. *Id*. The Court of Criminal Appeals concluded that his blood could be drawn under the authority of a search warrant. *Id.* at 615-17. Thereafter,

22

in what appears to be *dicta*, the Court stated that "[t]he implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant." *Id*. at 616. "It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Id*. In light of the holding in *McNeely*, and the inapposite facts now before us, we find the *dicta* in *Beeman* is not controlling. *See McGruder*, 2014 Tex. App. LEXIS 9022, at **7-8; *Forsyth v. State,* No. 11-12-00198-CR, 2014 Tex. App. LEXIS 8381, at *13 (Tex. App.—Eastland July 31, 2014, no pet. h.) (mem. op.).

The State argues that, because consent is implied under section 724.011, a warrantless blood draw is justified. We disagree with this premise because the fact that consent is implied under section 724.011 is not dispositive to our analysis of section 724.012(b) which is premised upon a *refusal* to consent. *See Reeder v. State*, 428 S.W.3d 924, 929-30 (Tex. App.—Texarkana 2014, pet. filed) (citing *Villarreal*, 2014 Tex. App. LEXIS 645, at **32-41) (mem. op.); *Weems v. State*, 434 S.W.3d 655, 660-65 (Tex. App.—San Antonio 2014, pet. granted).

The State also relies in part on a section of the plurality opinion in Part III of *McNeely* to support the State's position that section 724.012 permits the blood draw conducted on Anderson. *See McNeely*, 133 S.Ct. at 1564-1567 (plurality

23

opinion). More specifically, the State argues that language in the plurality implies that the Supreme Court has approved of the Texas implied consent provision and "thereby plainly rejected" the trial court's interpretation of *McNeely* in the instant case. We disagree with the State's argument. The plurality states that such statutes provide a "broad range of legal tools to enforce [a State's] drunk-driving laws and to secure BAC evidence *without undertaking warrantless nonconsensual blood draws*." *Id.* at 1566 (plurality opinion) (emphasis added). The implication of Part III is not inconsistent with nor does it "plainly reject" the trial court's interpretation of *McNeely*.[7]

In addition to the foregoing, as applied in this case, the State's overly broad argument regarding the application of section 724.012(b) would extinguish a right granted by the United States Constitution. While the Texas Legislature can grant greater or more expansive rights than those contained in the United States Constitution, it cannot extinguish the protections and rights guaranteed by the Constitution. As our sister courts have stated, "[t]he mandatory blood draw statute [section 724.012(b)] cannot—and does not purport to—alter the Fourth Amendment warrant requirement or its recognized exceptions." *Douds v. State*,

<hr>

[7]Other courts have also rejected the reliance upon the plurality opinion and characterize the statements as part of a rejoinder to a point made in Justice Roberts' opinion, concurring in part and dissenting in part. *Weems v. State*, 434 S.W.3d 655, 659 n.2 (Tex. App.—San Antonio 2014, pet. granted).

No. 14-12-00642-CR, 2014 Tex. App. LEXIS 6152, at *46 (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. filed) (mem. op.); *Weems*, 434 S.W.3d at 663-66; *Sutherland v. State*, No. 07-12-00289-CR, 2014 Tex. App. LEXIS 3694, at **23-31 (Tex. App.—Amarillo Apr. 7, 2014, pet. filed) (mem. op.); *Villarreal*, 2014 Tex. App. LEXIS 645, at **32-41.

Similarly, we conclude that section 724.012(b) does not constitute an exception to the Fourth Amendment's warrant requirement. Furthermore, we find nothing in the plain wording of the statute to indicate that the Texas legislature considered or intended the factual circumstances contained in 724.012(b) to create "exigent circumstances." The State is in essence asking this court to categorically find that the statutory provision in subsection 724.012(b) is a *per se* exception to the Fourth Amendment warrant requirement, which is something we cannot do because we conclude it is completely inconsistent with the holding in *McNeely. See McGruder*, 2014 Tex. App. LEXIS 9022, at *8; *Forsyth*, 2014 Tex. App. LEXIS 8381, at *17; *Weems*, 434 S.W.3d at 660.

The State also contends that the trial court erred in finding that the Transportation Code's implied consent provision 724.011 is "unconstitutional." However, the trial court did not find section 724.011 to be unconstitutional. Rather, the trial court's conclusion of law states that *McNeely* serves to "invalidate"

25

section 724.012. Additionally, the State argues that the implied consent statute should be upheld because doing so would show proper deference to the Legislature's determination that, at least with respect to the highly-regulated activity of driving an automobile on public roadways in Texas, consent to the taking of a specimen is non-revocable.

The State argues that it has an important interest in regulating its highways and in passing laws that punish individuals who choose to drive or operate a motor vehicle while they are intoxicated, but we are not persuaded that such interest outweighs the Fourth Amendment right to be free from unreasonable searches. In *McNeely*, the State of Missouri made a similar argument which the Court found to be unpersuasive.

> "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 451, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990). Certainly we do not. While some progress has been made, drunk driving continues to exact a terrible toll on our society. See NHTSA, Traffic Safety Facts, 2011 Data 1 (No. 811700, Dec. 2012) (reporting that 9,878 people were killed in alcohol-impaired driving crashes in 2011, an average of one fatality every 53 minutes).
> But the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case. To the extent that the State and its *amici* contend that applying the traditional Fourth Amendment totality-of-the-circumstances analysis to determine whether an exigency justified a warrantless search will undermine the

governmental interest in preventing and prosecuting drunk-driving offenses, we are not convinced.

*McNeely*, 133 S.Ct. at 1565-66. In similar fashion, the State has failed to persuade us that its interest in this area overrides the application of a traditional Fourth Amendment totality of the circumstances analysis to the facts surrounding Anderson's blood draw. *See McGruder*, 2014 Tex. App. LEXIS 9022, at *7; *Weems*, 434 S.W.3d at 660. *McNeely* reminds us that each case must be examined on a "case-by-case" basis, under a "totality of the circumstances" standard. *McNeely*, 133 S.Ct. at 1559. "In those drunk driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

Nevertheless, we find it unnecessary to rule upon the facial constitutionality of the statutory subsection at issue, because "'[w]e have no reason to fault the constitutionality of the mandatory blood draw statute in this case because it did not require [the officer] to obtain a blood draw without first securing a warrant.'" *McGruder*, 2014 Tex. App. LEXIS 9022, at *3 (quoting *Douds*, 2014 Tex. App. LEXIS 6152 at **48-49). It is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory

nature of the blood draw provision, that the trial court determined violates the Fourth Amendment. *Id.*

The State also argues that exigent circumstances justified the warrantless search and seizure of Anderson's blood. To determine whether the officer faced an emergency or whether "exigent circumstances" existed that justified acting without a warrant, we look to the totality of the circumstances. *McNeely*, 133 S.Ct. at 1558-59. In the absence of a warrant, "'the fact-specific nature of the reasonableness inquiry,' . . . demands that we evaluate each case of alleged exigency based 'on its own facts and circumstances.'" *Id.* at 1559 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) and *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931)).

As we have noted above, there are various scenarios that may give rise to circumstances sufficiently exigent to justify a warrantless search. In *Schmerber* and *McNeely*, the officers argued that the warrantless search was necessary to preserve or prevent the destruction of evidence. The Court of Criminal Appeals has recognized that the need to prevent the "destruction of evidence" may indeed justify a warrantless, nonconsensual search. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). We must examine the record before us to

28

determine whether or not the trial court erred in finding that no exigent circumstances existed to justify the warrantless blood draw from Anderson.

In his affidavit, Trooper Martinez offered the following reasons why he did not seek a warrant for the blood draw: he "was worried about the rapid dissipation of alcohol from the defendant's blood[;]" he "believed that [Anderson] would be taken by the doctor[]s for medical testing and that [he], therefore, would lose that evidence[;]" and he had no one at the hospital "to assist [him] in drafting a warrant, locating a judge, and presenting that warrant to the judge." We apply an objective standard of reasonableness to determine whether a warrantless search was justified, and we take into account the facts and circumstances known to the police at the time of the warrantless search. *Colburn v. State,* 966 S.W.2d 511, 519 (Tex. Crim. App. 1998).

With respect to its claim that there were exigent circumstances, the State argues that the trial court focused only on the officers' ability to obtain a search warrant for the black box and the officers' decision not to seek a warrant for the blood draw. The State suggests that more information would have been required for the blood draw warrant, and that obtaining the search warrant for the blood draw would have required combining all the knowledge of the officers at the hospital and at the accident scene.

29

The record in this case fails to establish that the combination of the knowledge from all of the officers would have caused any further delay in getting a search warrant for the blood than what it took to obtain the warrant for the black box. Furthermore, the evidence in the record does not provide that there was any further specific factual detail necessary for obtaining a search warrant for the blood that the officers did not already know and include in the application for the warrant they obtained for the black box. Notably, in the application for the warrant for the black box the State included the following details:

> On October 16, 2012 at approximately 4:10 PM, Corporal II Michael Chapman was notified of a motor vehicle crash on Carriage Hills and White Oak in Montgomery County, Texas. When Corporal Chapman arrived on the scene he observed a vehicle that had struck a tree and had several Precinct 3 Deputy Constables on scene. Deputy Robert Moody advised me that the driver had a beer in her lap and her 2 year old child in her lap in the driver seat un-restrained. The 2 year old child was identified as [L.A.]. The driver was transported to Memorial Hermann The Woodlands. The driver was identified as Esther Aboytes Anderson by her Texas Driver's License. The 2 year old child was transported to Memorial Hermann – Texas Medical Center due to the severity of the injuries to the child. Trooper Martinez went to Memorial Hermann The Woodlands to speak with Anderson. Upon making contact with Anderson, he was confronted with several signs of intoxication, including a strong odor of an alcoholic beverage on her breath, red-bloodshot eyes, and she had a confused demeanor. Anderson told Trooper Martinez that she drank a six-pack of Busch Light. She told Martinez that she started drinking around noon and stopped drinking just before the crash. When Martinez first started talking to Anderson, Anderson did not know what happened and did not appear to know that her child was in the car. Trooper Martinez determined that Anderson had lost the

30

normal use of her physical and/or mental faculties. Trooper Martinez placed Anderson under arrested [sic] for Driving While Intoxicated with a Child Passenger and read the DIC-24 to Anderson. Trooper Martinez requested a specimen of blood from Anderson. Anderson refused to consent to the taking of a blood specimen. Trooper Martinez had the hospital staff take a mandatory blood sample from Anderson.

Based upon the testimony and evidence submitted at the suppression hearing, the trial court could have reasonably concluded that there was no factual support for the State's argument about further delay that would have threatened the destruction of evidence beyond the time it needed to obtain a search warrant for the black box. *See generally McNeely*, 133 S.Ct. at 1561, 1563. Indeed, the evidence at the suppression hearing indicates that there was a judge available and on stand-by, that there were other law enforcement officers and two assistant district attorneys on the scene, as well as attorneys and staff at the courthouse who were available. The trial court could have reasonably concluded based on the record that the same procedure used to obtain the search warrant for the black box could have been used to obtain a search warrant for Anderson's blood. Even though Trooper Martinez was at the hospital with Anderson, one or more of the other officers at the scene of the accident, with the assistance of the assistant district attorneys, could have taken steps to secure a warrant for the blood draw either simultaneously with or separate from the application for the warrant for the black box. *See id.* at 1561 (noting no

31

warrant exception applies when, "between the time of the arrest or accident and the time of the test," an officer other than the one handling the suspect "can take steps to secure a warrant"). Considering the totality of the circumstances and viewing the evidence in a light most favorable to the trial court's ruling on the motion to suppress, we conclude that the trial court did not abuse its discretion in determining there were no exigent circumstances that justified a warrantless blood draw from Anderson.

## GOOD FAITH RELIANCE

In its final issue, the State argues that the "good faith" exception to the "exclusionary rule" should apply to this case. The State contends that Trooper Martinez acted in "good faith reliance" on section 724.012(b) which he believed authorized him to obtain the warrantless blood draw. The Texas exclusionary rule is found in article 38.23 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). The statute provides that evidence may not be used or admitted in the criminal trial against the defendant if the evidence is obtained by "an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]" *Id.* art. 38.23(a).

32

Unlike the Texas statutory exclusionary rule, the federal exclusionary rule is judicially created and it has at least three good faith exceptions. *See Davis v. United States*, 131 S.Ct. 2419, 2427-28 (2011); *Douds*, 2014 Tex. App. LEXIS 6152, at *51. For example, under the federal exclusionary rule, when a law enforcement officer relies in good faith on a statute authorizing a warrantless search, and the statute is later found to be unconstitutional, the exclusionary rule does not bar the government from using the evidence it obtained. *See Illinois v. Krull*, 480 U.S. 340, 342 (1987); *Weems*, 434 S.W.3d at 666. Additionally, when the search was conducted in good faith reliance upon binding appellate precedent which is later overturned, the federal courts may apply the good faith exception to limit the exclusionary rule. *See Davis*, 131 S.Ct. at 2427-28. Finally, when the search was conducted in good faith reliance upon a warrant which is later determined to be improperly issued, the federal courts have applied the good faith exception. *See Krull*, 480 U.S. at 342.

In contrast to the federal application of the judicially created good faith exceptions to the exclusionary rule, the Texas legislature expressly adopted a statute that specifies only one legislative good faith exception to the exclusion of such evidence. The only exception stated in the Texas statutory exclusionary rule is

when the officer relies in good faith upon a *warrant* issued by a neutral magistrate based on probable cause. *See* Tex. Code Crim. Proc. Ann. art. 38.23(b).

"The Court of Criminal Appeals has held that exceptions to the federal exclusionary rule only apply to the Texas statutory exclusionary rule if they are consistent with the plain language of the statute." *Douds*, 2014 Tex. App. LEXIS 6152, at *52 (comparing *Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex. Crim. App. 2013) to *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996)). And, "[t]he Court of Criminal Appeals has previously rejected an effort to broaden the good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule." *Douds*, 2014 Tex. App. LEXIS 6152, at *52 (citing *Howard v. State*, 617 SW.2d 191, 198 (Tex. Crim. App. 1979) (op. on reh'g)). The stated exception in article 38.23(b) expressly applies only when a warrant has been issued by a neutral magistrate and the officer relied upon the warrant. Because there was no warrant issued in this case, the statutory exception in article 38.23(b) does not apply. Accordingly, we overrule this issue.

## CONCLUSION

In conclusion, neither the implied consent provision in section 724.011, nor the mandatory blood draw described in section 724.012 required that the officer

34

take Anderson's blood without a warrant. The implied consent and mandatory blood draw provisions are not *per se* exceptions to the Fourth Amendment's warrant requirements. Furthermore, considering the totality of the circumstances and viewing the evidence in a light most favorable to the trial court's ruling on the motion to suppress, we conclude that the trial court did not abuse its discretion in determining there were no exigent circumstances that justified a warrantless blood draw from Anderson.[8] We therefore affirm the trial court's order granting the motion to suppress.

     AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 22, 2014
Opinion Delivered October 8, 2014
Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.

---

[8]Our holding herein applies solely to a blood specimen. *See* Tex. Transp. Code Ann. § 724.012(b).