COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MICHAEL WAYNE PARSONS, | § | |
| | | No. 08-13-00340-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court Number Two |
| | § | |
| THE STATE OF TEXAS, | | Of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1278599D) |
| | § | |

## **O P I N I O N**

This DWI case raises the question of whether the State, consistent with the Fourth Amendment to the U.S. Constitution, can take an involuntary blood sample based only on the Texas implied consent statute. TEX.TRANSP.CODE ANN. § 724.012(b)(West 2011). Assuming reliance on the blood draw statute is not sufficient by itself, we are alternatively asked whether the record supports the exigent circumstance exception to the Fourth Amendment, here based on the destruction of evidence through the dissipation of alcohol from Appellant's blood. For the reasons noted below, and based on *State v. Villarreal*, 475 S.W.3d 784 (Tex.Crim.App. 2014), we reverse the conviction below.

### *Background*

The pertinent facts of this case are uncontested. Appellant was indicted for felony DWI

having had two prior convictions. The indictment arose out of Appellant's arrest on April 14, 2012. Officer Doug Kerr of the Haltom Police Department was dispatched to the scene of an accident around 12:30 a.m. in the morning.[1] Upon arrival at the scene, Officer Kerr saw that Appellant's vehicle had run into the back of a parked trailer. Appellant's car had sustained heavy front end damage and the air bags had deployed. Nonetheless, there were apparently no injuries associated with the accident as there was no need for EMS.

According to Officer Kerr, Appellant smelled of alcohol. Appellant admitted at the scene that he had had five beers over a five hour period. His first drink was at approximately 6:20 p.m. and his last at approximately 11:30 p.m. Officer Kerr performed a field sobriety test. Appellant gave six of six positive clues for intoxication on the horizontal gaze nystagmus test; four of eight clues on the walk and turn test; and three of seven clues on the standing on one leg test.

Officer Kerr placed Appellant under arrest at the scene. Based on the timing of the *Miranda* warnings, the arrest would have been made at about 1:00 a.m. A criminal history check turned up at least two prior driving while intoxicated convictions. After receiving the statutory warnings, Appellant refused to give a voluntary specimen. Officer Kerr then decided to require a mandatory blood draw based on the Texas Transportation Code:

Q. At that point in time, you decided to pursue a mandatory blood draw?

A. Correct.

Q. And it was your understanding that the statute that requires an officer to perform a mandatory blood draw, does not give you any type of discretion; you must go and complete that blood draw and obtain that specimen?

A. Correct.

---

[1] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* Tex.R.App.P. 41.3.

Q. And that's what you did?

A. Yes, ma'am.

Q. I understand. The reason you did not [obtain a warrant is] because you were relying on this part of the Transportation Code that says you didn't have to?

A. Well, I was following what our normal and general --

Q. And what your normal procedure is?

A. Correct.

Another officer arrived to clear the accident scene. Officer Kerr had no responsibility to interview witnesses, examine the damaged vehicles, or otherwise handle the accident scene. The hospital used for blood draws was some fifteen to twenty minutes away. Once at the hospital's emergency department, the officer must locate an available phlebotomist; Officer Kerr could not recall if the ER was busy that night. Appellant's blood was drawn at 1:50 a.m. which was about two hours and twenty minutes after his last drink. Officer Kerr did not recall any particular lengthy delays that he encountered from the time he got to the scene until the blood draw was completed. Our record also contains no evidence of how fast alcohol dissipates from the human body in general, or a person of Appellant's size in particular.

Officer Kerr was familiar with the procedures for obtaining a warrant for a blood specimen. When a warrant is required, the suspect is taken to the North Hills detention facility. It usually takes fifteen to twenty minutes to process the suspect into the facility. The officer would then log on to a computer, write a report, and print out a warrant. Depending on the nature of the case, this warrant paperwork can take from thirty to ninety minutes. The officer would then contact one of two local judges and either meet with the judge in person or complete the warrant process by fax. If the warrant is issued, the suspect is then released from the jail back to the officer's custody and driven to the hospital for the blood draw. The record does not

3

reflect how long the process takes from the time the judge is contacted until the suspect is taken to the hospital.

Appellant filed a motion to suppress the results of the blood draw based on the absence of a warrant. At the hearing, the State argued that the mandatory blood draw statute was constitutional and properly followed in this case. The State also argued that Officer Kerr was facing the exigency of losing evidence through dissipation of alcohol from Appellant's blood. The trial court overruled the motion to suppress, basing its ruling on the Texas Transportation Code's implied consent provision as a valid exception to the warrant requirement of the Fourth Amendment.

The case proceeded to a jury trial. Appellant's blood sample contained 0.17 grams of ethyl alcohol per 100 milliliters of whole blood. The results of the blood draw were admitted into evidence and played a significant role in the State's case. Appellant was found guilty by the jury and sentenced to five years by the court.

In a single issue on appeal, Appellant contends that the trial court erred in overruling his motion to suppress in that his Fourth Amendment rights were violated by a warrantless search. In our review of this issue, we afford almost total deference to the trial court's determination of the historical facts that the record supports. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We also afford the same amount of deference to the trial court's rulings on the application of the law to the facts--so called mixed questions of law and fact--if resolution of those questions turns on an evaluation of credibility and demeanor. *Id*. at 89. But we review *de novo* "mixed questions of law and fact" not falling within this category. *Id.*

*Discussion*

The United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct.

4

1826, 16 L.Ed.2d 908 (1966) held that an involuntary blood draw could pass Fourth Amendment scrutiny. The Court first acknowledged that taking blood from a person constituted a search and seizure under the Fourth Amendment. *Id*. at 767, 86 S.Ct. at 1834. But the involuntary blood draw was reasonable under the exigent circumstances exception to the Fourth Amendment based on three facts established by the record in that case. *Id*. at 770-71, 86 S.Ct. at 1835-36. First, the Court acknowledged that the percentage of alcohol in the blood begins to drop after a person stops drinking because the body eliminates it from the system (thus causing the destruction of evidence). *Id*. Second, there was already a delay in taking the accused to the hospital because the officer had to investigate the scene of the injury accident where the accused was found. *Id*. Finally, the Court stated that there was no time to seek out a magistrate and secure a warrant. *Id*. Noting these "special facts" the Court agreed the involuntary blood draw was appropriate. *Id*.

The Court revisited the involuntary blood draw issue in *Missouri v. McNeely,* 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), a case where the State of Missouri contended that the singular fact that alcohol dissipates from the body was sufficient by itself to create an exigent circumstance justifying a warrantless seizure of a defendant's blood. 133 S.Ct. at 1560. A plurality of the Court disagreed. It rejected a per se rule, instead reaffirming that whether the exigent circumstances exception is met must be judged on the totality of circumstances on a case by case basis. *Id*. at 1561. The plurality explicitly states that a warrantless blood draw must fall under one of the recognized exceptions to the Fourth Amendment. *Id*. at 1558. Another recognized exception to the warrant requirement--consent--was not expressly at issue in *McNeely* but has become the focus of subsequent Texas appeals in this area.

Missouri had in effect a statute which provided that each driver was deemed to have given implied consent to give a blood sample under certain circumstances, such as when they are

involved in a serious injury accident. MO. ANN. STAT. §§ 577.020.1, 577.041 (West 2015). The Texas Transportation Code similarly mandates the taking of a blood sample when an officer arrests a person for DWI and the person is either involved in an accident involving serious injury or death, or that person has two or more prior convictions for DWI. TEX.TRANSP.CODE ANN. § 724.012(b)[2] The Texas statute also provides that one operating a motor vehicle in a public place gives implied consent for the blood sample. *Id.* at § 724.011(a). Whether *McNeely* also invalidates the implied consent under the Texas Transportation Code spawned considerable debate. Several court of appeals decisions have held that the implied consent provision of the Texas statute does not by itself justify a non-consensual blood draw. *Gore v. State*, 451 S.W.3d 182, 193 (Tex.App.--Houston [1st Dist.] 2014, pet. ref'd); *State v. Anderson*, 445 S.W.3d 895, 908 (Tex.App.--Beaumont 2014, no pet.); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex.App.--San Antonio, 2014, pet. ref'd); *Sutherland v. State*, 436 S.W.3d 28, 41 (Tex.App.--Amarillo 2014, pet. ref'd); *Holidy v. State*, No. 06–13–00261–CR, 2014 WL 1722171, at *1 (Tex.App.-- Texarkana April 30, 2014, pet. granted)(mem. op.).[3] Some of these cases have also rejected the State's arguments attempting to distinguish *McNeely* or apply other exceptions to work around it. *Anderson*, 445 S.W.3d at 912 (good faith exception); *Douds v. State*, 434 S.W.3d 842, 860

---

[2] Germane to this case, Section 724.012(b) provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
> .          .          .
>
> (3) at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
>
> .          .          .
>
> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04 [misdemeanor DWI] . . . .

[3] We note that the trial court heard the motion to suppress on May 13, 2013, which was a little less than a month after *McNeely* was handed down; the trial court did not have the benefit of any of the recent cases construing *McNeely* and the Transportation Code.

(Tex.App.--Houston [14th Dist.] 2014), *rev'd on other grounds*, 472 S.W.3d 670 (Tex.Crim.App. 2015), *cert. denied*, 136 S.Ct. 1461 (2016)(good faith exception).

The Texas Court of Criminal Appeals has now resolved most of the mandatory blood draw issues in *State v. Villarreal.* In *Villarreal*, an officer made a traffic stop and in questioning the driver, found him to have slurred speech, red watery eyes, and the strong smell of alcohol. 475 S.W.3d at 788. When a background check showed the driver had several prior DWI convictions, the arresting officer took the driver to a hospital for a blood draw, despite the driver's non-consent. *Id*. The officer viewed the Texas Transportation Code as mandating the blood draw, and while he "could have" obtained a warrant, he believed that the statute made a warrant unnecessary. *Id*. at 789. We view these facts as indistinguishable from Appellant's situation.

The trial court in *Villarreal* held the blood draw improper. *Id*. at 789. The court of appeals affirmed and the Texas Court of Criminal Appeals squarely confronted the State's implied consent argument under the Texas Transportation Code. *Id*. at 791. It also addressed several alternative arguments by the State raising other possible exceptions to the Fourth Amendment: the automobile exception, search incident to arrest exception, and the special needs exceptions. *Id*. at 805-07. Lastly the court addressed the State's claim that a general Fourth Amendment balancing test could justify the involuntary blood draw. *Id*. at 808.

With regards to implied consent, the opinion questions whether the consent was freely and voluntarily given. *Id*. at 799. As happened here, the defendant in *Villarreal* had expressly refused to give consent for the blood sample. *Id*. at 800 ("In other words, implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires."). Likewise, the decision rejects implied

consent analogies urged by the State from other contexts, such as that given by parolees, probationers, public school students, and some federal contractors. *Villarreal,* 475 S.W.3d at 804-05.

The court then rejected each of the State's proffered justifications for the blood draw, concluding:

> We hold that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. We thus reject the State's assertion that a warrantless, nonconsensual blood draw conducted pursuant to those provisions can fall under one of the established exceptions to the warrant requirement described above, and we further reject the State's suggestion that such a search may be upheld under a general Fourth Amendment balancing test.

*Id*. at 813. As is evident, the decision rejects each of the additional Fourth Amendment exceptions urged by the State. *Id*. at 805-08. Only the exigent circumstances exception was not at issue in *Villarreal*. *Id*. at 789.

The State's motion for rehearing in *Villarreal* was originally granted but more recently was denied as having been improvidently granted. 475 S.W.3d at 817. We therefore hold that the trial court could not have justified the warrantless blood draw based on the Texas Transportation Code's implied consent provision for the same reasons as set forth in the latest decision in *Villarreal v. State*.

We also note that following *Villarreal*, the Fort Worth Court of Appeals decided *Burks v. State*, 454 S.W.3d 705 (Tex.App.--Fort Worth 2015, pet. ref'd) which overturned a trial court's denial of a motion to suppress. The defendant in that case was pulled over for a traffic violation, found to have overt signs of intoxication, and was taken for an involuntary blood draw because he had two or more prior convictions for DWI. *Id*. at 706-07. The officer believed the implied consent provisions of the Texas Transportation Code permitted the blood draw. *Id*. at 707-08. Based on *Villarreal*, the Fort Worth Court reversed the trial court order denying the motion to

suppress. 454 S.W.3d at 709; *see also Chidyausiku v. State*, 457 S.W.3d 627 (Tex.App.--Fort Worth 2015, pet. filed)(officers at the scene of a fatal impact collision could not rely on implied consent statute for mandatory blood draw). *Burks* and *Chidyausiku* are particularly instructive to us because in this transferred case, we are bound to follow the precedents of the transferring court of appeals. *See* TEX.R.APP.P. 41.3.

*Exigent circumstances--the potential loss of evidence*

The State also argues that whether the application of the mandatory blood draw statute is constitutionally infirm or not, Officer Kerr had sufficient cause in this case to get a blood sample because the alcohol in Appellant's system was rapidly dissipating. The record contains some evidence of the time of the first drink (6:20 p.m.), the last drink (11:30 p.m.), and the time of arrest (1:00 a.m.). The record also contains some evidence for some, but not all, of the steps necessary to obtain a warrant. Based on the lost time that it would take to get a warrant, the State reasons Officer Kerr's actions fell under a recognized exigent circumstance to forego the warrant--the destruction of evidence.

We find a few flaws in this argument. First, the State did not develop below a complete record of how long it would actually take to secure a warrant. It presented some testimony that it might take anywhere from 45 minutes to 110 minutes for an officer to get the paperwork ready for the judge, but there was no testimony of how long the process takes after that, or where Appellant's case might have fit in that time span. The State did not put on any evidence responding to the alternative suggested in *McNeely* of having one officer transport the suspect to the hospital while another processes the warrant paperwork. 133 S.Ct. at 1561. Nor did the State present any evidence of how quickly alcohol dissipates from the blood stream for a person in general, or a person of Appellant's size in particular. The record in *McNeely* contained some

9

general evidence of dissipation rates (.015 to .02 per hour), but more accurate rates depend on a suspect's particular characteristics, such as sex and weight. *Id*. at 1560. Our record is simply devoid of any such information.

We agree that *Schmerber* can provide a valid existing exception to the Fourth Amendment based on a proper set of facts. But unlike the situation in *Schmerber* where the officer encountered the delay of investigating an injury accident, Officer Kerr had no delays occasioned by the investigation of the accident scene. Unlike *Schmerber* where there was a claim that the officer could not have timely secured a warrant, there is no evidence that a warrant could not have been timely secured in this situation. Officer Kerr agreed that there were no unusual delays in the processing procedures for Appellant. There was simply nothing unusual about this case that puts it into an exigent circumstance.[4] *See Gore*, 451 S.W.3d at 197 (finding lack of exigent circumstance in 25 minute delay from removing children from scene of minor accident); *Forsyth v. State*, 438 S.W.3d 216, 222 (Tex.App.--Eastland 2014, pet. ref'd)(State failed to prove exigent circumstance where there was no evidence of how long officer would have had to wait to get warrant); *Sutherland*, 436 S.W.3d at 40 (State failed to prove exigent circumstances as officer did not testify to any unusual delay in getting warrant or that he was confronted with emergency); *Douds*, 434 S.W.3d at 855-56 (failure of officer to testify that obtaining warrant would threaten destruction of evidence).

In *Villarreal* the Court of Criminal Appeals reviewed the trial court's ruling *de novo* because none of the underlying facts were disputed. 475 S.W.3d at 798. In this case, there are also no disputed facts, at least none that would implicate any of the Fourth Amendment exceptions raised by the State. Each of the exceptions to the Fourth Amendment that the State

---

[4] We also note that the trial court when explaining its ruling relied only on the implied consent statute and never suggested its decision was based on the exigent circumstance or any other exception to the Fourth Amendment.

urges in this case have been expressly rejected by *Villarreal*.[5] Only the exigent circumstances exception was not at issue in *Villarreal*. 475 S.W.3d at 797. But the facts in this record do not support the kind of exigent circumstances that the U.S. Supreme Court found sufficient in *Schmerber*.

We accordingly sustain Appellant's single issue and reverse the trial court's order denying Appellant's motion to suppress and the trial court's judgment of conviction, and remand the case to the trial court for further proceedings consistent with this opinion.

June 8, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[5] One exception urged here, the "cumulative, non-dualistic approach to exceptions and reasonableness" appears to us to be the same "general Forth Amendment balancing test" rejected by the Court of Criminal Appeals in *Villarreal*. All of the other exceptions advanced by the State are identically worded to those expressly rejected in *Villarreal*.