# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-CR-817 |
| | ) | |
| ROBERT OWENS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**INTERLOCUTORY APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1108-FA-57583

**August 15, 2013**

**OPINION — FOR PUBLICATION**

**BRADFORD, Judge**

Indianapolis Metropolitan Police Officer Maurice Shipley observed Appellee-Defendant Robert Owens walk out from behind a school late at night in a high-crime neighborhood. As Officer Shipley approached, he saw Owens put something in his mouth and tuck something into the rear of his waistband. Officer Shipley told Owens to put his hands up and then handcuffed him. By this point, Officer Shipley could smell marijuana coming from Owens. When Officer Shipley asked Owens what was going on, Owens admitted that he "just threw a half a blunt in [his] mouth." Officer Craig Solomon arrived at around this time and noticed that Owens seemed to be reaching down into the rear of his boxer shorts. When Owens denied having anything secreted in his shorts, Officer Shipley told him that if he did not want to admit that he had hidden something in his shorts, Owens would be arrested and police would find it then.

When Officer Shipley went to his vehicle to check Owens's identification, Owens took flight. Both officers yelled at Owens to stop and gave chase, tackling Owens on the other side of the street. During the struggle, Owens was bucking and kicking and head-butted Officer Solomon in the face. As the officers were walking Owens back across the street, he again attempted to run. When the officers tackled Owens a second time, Owens kicked Officer Solomon and bit Officer Shipley on the thigh. Both officers saw that Owens had a baggie containing a white powdery substance in his hand. Officer Shipley tased Owens twice before Owens finally became compliant.

In this prosecution of Owens for Class A felony dealing in cocaine, Class A felony cocaine possession, two counts of Class D felony battery on a law enforcement officer, two counts of Class D felony resisting law enforcement, and Class D felony obstruction

2

of justice, Appellant-Plaintiff the State of Indiana appeals from the trial court's grant of Owens's motion to suppress evidence. Owens concedes that any evidence relating to Owens's alleged flight from or battery of the police officers should not have been suppressed. The State argues that (1) even if the initial stop of Owens was illegal, Owens's subsequent criminal actions were sufficient to remove the taint of that illegal stop and (2) the officers' actions were reasonable such that Article I, Section 11 of the Indiana Constitution does not require suppression of any evidence. Finding the State's arguments unpersuasive, we conclude that Owens's actions following the illegal stop were not sufficient to dissipate the taint of the stop, and so any evidence gathered pursuant to the stop should have been suppressed. Consequently, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this appeal do not appear to be in dispute. At approximately 11:45 p.m. on August 13, 2011, Officer Shipley was driving east on West 21st Street in Indianapolis past School 44 when he observed Owens, who appeared to be coming out from behind the building. Officer Shipley described the area as a "very high-crime area, high-narcotics area." Tr. p. 8. Officer Shipley, who was in full uniform and driving a fully-marked police vehicle, approached Owens. While Officer Shipley was still in his vehicle approximately twenty-five feet away from Owens, he observed Owens "throw something in his mouth and tuck something behind his waist, the rear of his waistband." Tr. p. 10. Officer Shipley told Owens to put his hands up and then to put them behind his back. Officer Shipley detected the odor of marijuana coming from

3

Owens as he approached on foot more closely, and handcuffed him. After Owens told Officer Shipley, "I'm not going to lie, I just threw a half a blunt in my mouth[,]" Officer Shipley noticed pieces of marijuana at Owens's feet. Tr. p. 12. Around this time, Officer Solomon arrived.

Officer Shipley patted Owens down for weapons but did not find anything. Officer Solomon detected the odor of marijuana and noticed that Owens was "fishing about the rear of his pants [and] reaching his hands down inside his boxer shorts." Tr. p. 39. Officer Solomon asked Owens if he had anything "down his pants or in his posterior[,]" and Owens denied that he did. Tr. p. 40. Officer Shipley then said to Owens, "if you don't want to admit it, we'll just have you arrested and find it at the APC." Tr. p. 40.

When Officer Shipley attempted to "grab [Owens's] ID to run … his information through [his] computer[,] Owens took off running." Tr. p. 13. Both officers yelled for Owens to stop and gave pursuit. Owens ran across the street, where he was tackled by Officer Solomon. During the ensuing struggle, Owens was "basically do[ing] every manner of resisting he could while still in handcuffs" and "actively trying to grab whatever was in his shorts[.]" Tr. pp. 14, 41. At some point, Owens head-butted Officer Solomon in the face.

The officers managed to temporarily subdue Owens, but he attempted to flee again as they walked him back across the street, and the officers again took him to the ground. During the second altercation, Owens bit Officer Shipley on the inner thigh and kicked Officer Solomon in the chest with both feet. Again Owens was reaching for something in

4

his shorts. At some point, Officer Shipley observed a baggie of white powder in Owens's hand, and when Officer Shipley went to grab Owens's hand, the baggie fell to the ground. After Owens failed to comply with Officer Shipley's commands to stay on the ground, Officer Shipley tased him twice.

On August 15, 2011, the State charged Owens with Class A felony dealing in cocaine, Class A felony cocaine possession, two counts of Class D felony battery on a law enforcement officer, two counts of Class D felony resisting law enforcement, and Class D felony obstruction of justice. On January 27, 2012, Owens filed a motion to suppress evidence discovered during his August 13, 2011, encounter with police. On September 18, 2012, following a hearing, the trial court granted Owens's motion to suppress.

## DISCUSSION AND DECISION

We review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *State v. Moriarity*, 832 N.E.2d 555, 557-58 (Ind. Ct. App. 2005). When conducting such a review, we will not reweigh evidence or judge witness credibility. *Moriarity*, 832 N.E.2d at 558. In such cases, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Estep*, 753 N.E.2d 22, 24-25 (Ind. Ct. App. 2001). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id*. at 25. As previously mentioned, there is no conflict regarding the underlying facts of this case. Consequently, the State's claims come to us essentially as pure questions of law.

5

**Fourth Amendment**

The Fourth Amendment to the United States Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961))] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

### *Attenuation Doctrine*

Owens concedes that evidence related to his alleged battery of the police officers and resisting of law enforcement need not be suppressed, even if the initial stop was illegal. For its part, the State concedes that the initial stop was illegal, which also amounts to a concession that evidence related to the "blunt" Owens apparently attempted to ingest should be suppressed.[1] The only evidence at issue, then, is evidence of the suspected cocaine. The State contends that, even if the initial stop of Owens was illegal, Owens's subsequent actions in violently resisting law enforcement were sufficient to remove any taint.

---

[1] This is the evidence that supports the obstruction of justice charge.

[T]he exclusion of evidence is not the result of a simple "but for" test. [*U.S. v. Green*, 111 F.3d 515,] 520 [(7th Cir. 1997)]. The [*Green*] court observed that not all evidence is the "'fruit of the poisonous tree'" because it is the result of an illegal search or seizure. *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417-18, 9 L. Ed. 2d 441 (1963)). "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (internal quotations omitted). Evidence may be purged of the primary taint if the causal connection between the illegal police conduct and the procurement of the evidence is "so attenuated as to dissipate the taint of the illegal action." *Id.* at 521 (internal quotations omitted).

… Three factors for consideration in determining whether the causal chain is sufficiently attenuated are: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975)). The important consideration in the third factor is whether the evidence came from "'the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417).

*Quinn v. State*, 792 N.E.2d 597, 600 (Ind. Ct. App. 2003), *trans. denied*.

The State acknowledges that the time between the initial stop and the discovery of the baggie was short but argues that Owens's voluntary criminal acts committed after the initial detention and the absence of flagrant police misconduct were sufficient to dissipate any taint. Under the facts and circumstances of this case, we cannot agree. Although the alleged cocaine was not actually discovered until after Owens's attempted flight from and battery of the officers, the record clearly indicates that the decision to arrest Owens was made *before* his flight, rendering discovery of the evidence all but inevitable. Because the cocaine had all but been discovered before Owens's flight, his actions cannot be said to have caused its discovery in any meaningful sense. Under the circumstances of this

this case, the causal connection between the illegal police conduct and the discovery of the cocaine was not broken.

Our result is consistent with the rationale underlying the attenuation doctrine. As this court observed in *Cole v. State*, 878 N.E.2d 882 (Ind. Ct. App. 2007):

> Other courts in this country have held that eluding the police and resisting arrest in response to an unconstitutional stop or pat down constitute intervening acts and therefore the evidence seized incident to those intervening criminal acts will not be subject to suppression. *See* [*State v.*] *Williams*, 926 A.2d [340,] 349 [(N.J. 2007)] …. The point of these cases is that the law should deter and give no incentive to suspects who endanger the police, themselves, and possibly others by not submitting to official authority. *See id.* A defendant should not have the right to use an improper stop as justification to commit a new and distinct crime of resisting law enforcement. *Id.* Rather, if a defendant merely stands his ground and resorts to the court for a constitutional remedy, then the unlawful stop will lead to the suppression of the evidence. *Id.*
> As the New Jersey Supreme Court recognized in *Williams*, this approach balances both the right of the people to be free from unreasonable searches and seizures and their right to be free from the dangers created by suspects who physically resist the police and provides sufficient disincentives to deter both police misconduct and criminal misconduct by suspects. *Id.*

*Id.* at 888 (some citations omitted). The result in this case neither rewards Owens for his alleged flight and battery nor the police for their illegal stop of Owens, fully satisfying the rationale behind the attenuation doctrine.

The State contends that this case cannot be distinguished from *Cole*, in which we concluded that the act of resisting law enforcement following a detention was sufficient to purge any taint, even if the initial detention was illegal. *Id.* In *Cole*, an Officer Decker approached a car containing Cole and another person because the officer had seen several persons approach the parked car in fifteen or twenty minutes of observation. *Id.* at 884.

8

When Officer Decker approached the car and asked the two occupants for identification, Cole stepped out and began walking away. *Id*. Officer Decker twice ordered Cole back into the car but, instead of complying, Cole ran. *Id*. After a foot chase, police apprehended Cole, and a pat-down uncovered a loaded .22 caliber revolver. *Id*. at 884-85.

The *Cole* court first noted the likely impropriety of the initial stop, *id*. at 885, but went on to conclude that "even though Officer Decker may not have had reasonable suspicion to stop Cole, he did have probable cause to believe that Cole violated the resisting law enforcement statute by fleeing after being ordered to stop and by forcibly resisting him." *Id*. at 887. In *Cole*, however, there is no indication that the revolver was ever going to be discovered absent Cole's flight, which neatly distinguishes that case from this one. Quite simply, Cole's actions caused the revolver's discovery, not the police misconduct, in contrast to this case, where police misconduct had already made discovery of the alleged cocaine inevitable before Owens's actions.[2]

**CONCLUSION**

---

[2] Because we conclude that the evidence at issue is inadmissible pursuant to the Fourth Amendment, we need not address its admissibility pursuant to Article I, Section 11 of the Indiana Constitution.

9

All agree that evidence related to Owens's flight from and battery of Officers Shipley and Solomon should not have been suppressed.[3] To the extent that the trial court's order suppressed this evidence, we reverse it. We conclude, however, that any and all evidence related to the "blunt" that Owens allegedly attempted to ingest and the alleged cocaine found on his person should be suppressed, and affirm that portion of the trial court's order.

The trial court's order is affirmed in part, reversed in part, and remanded for further proceedings.

BROWN, J., concurs.

RILEY, J., concurs in part and dissents in part with opinion.

---

[3] At oral argument, counsel for Owens conceded that his argument was limited to the physical evidence seized from Owens and that the trial court's original order on Owens's motion to suppress did not encompass evidence related to his resisting and battery: "[A]t this point, I don't believe that the actual resist and battery were something that the trial court had a chance to address or ruled on in [its] suppression [order]. I think he simply ruled on the physical evidence, the marijuana and cocaine." State of Indiana vs. Robert Owens, video recording of oral argument held on June 18, 2013, https://mycourts.in.gov/arguments/default.aspx?&id=1526&view=detail&yr=&when=&page=1&court=app&search=&direction=%20ASC&future=False&sort=&judge=&county=&admin=False&pageSize=20. We take this as a concession that no challenge is being made to the admissibility of evidence related to Owens's resisting law enforcement and battery charges.

Even if one concludes that Owens did not concede this point, it is well-established under Indiana law that a person may not forcibly resist a peaceful arrest. *See, e.g.*, *Row v. Holt*, 864 N.E.2d 1011, 1017 (Ind. 2007) ("Even if the arrest for battery was invalid, resisting is still an independent offense."), *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000) ("The general rule in Indiana is that 'a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful.'") (quoting *Casselman v. State*, 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985)), *trans. denied*. There is no indication that the encounter between Owens and the police officers was anything other than peaceful until Owens's attempted flight.

# IN THE

# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,      )
     )
       Appellant-Plaintiff,      )
     )
           vs.      )      No. 49A02-1210-CR-817
     )
ROBERT OWENS,      )
     )
       Appellee-Defendant.      )

**RILEY, Judge, concurring and dissenting**

I concur with the majority's decision to affirm the trial court's suppression of evidence pertaining to Owens's arrest for cocaine dealing, cocaine possession, and obstruction of justice. However, I respectfully dissent from the majority's decision to reverse the trial court's suppression of evidence pertaining to Owens's battery upon and flight from Officers Shipley and Solomon. The majority writes that "[a]ll agree that evidence related to Owens's flight from and battery of Officers Shipley and Solomon should not have been suppressed." Slip op. at 10. By merely acknowledging and recognizing an arguable point, Owens does not make such concession. As the trial court was in the best position to assess whether Owens's actions resulted from the officers' exploitation of the illegal stop, I would affirm the trial court.

At the suppression hearing, the State relied on Indiana case law establishing that a private citizen may not use force in resisting a peaceful arrest by an individual he knows,

11

or had reason to know is a police officer performing his duties even though the original stop might have been unlawful. *See Cole v. State*, 878 N.E.2d 882, 886-87 (Ind. Ct. App. 2007). However, the trial court rejected the State's argument:

> [TRIAL COURT]: My position, I just got reversed on that same argument where I found that the officer contact [sic], even though […], but he had no right to resist.
>
> [STATE]: Right.
>
> [TRIAL COURT]: I was just reversed […] and I bought that argument from you guys the last time. We got it reversed.
>
> [* * *]
>
> [TRIAL COURT]: […]. I don't think that there was sufficient reasonable suspicion stated to do a stop and then a frisk. And then even if there was, I'm not sure what was done under the circumstances was reasonable.

(Transcript pp. 49, 52).

Attenuation, as an exception to the exclusionary rule, applies in cases where the connection between the illegal police conduct and the subsequent discovery of evidence becomes so attenuated that the deterrent effect of the exclusionary rule is no longer justified. *See Brown v. Illinois*, 422 U.S. 590, 609 (1975). The causal chain must be sufficiently attenuated to dissipate any taint of an illegal stop. *See Quinn v. State*, 792 N.E.2d 597, 601 (Ind. Ct. App. 2003), *trans. denied*. Three factors are evaluated to determine whether the attenuation doctrine applies: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id*.

With respect to the first factor, the State asserts that "[t]he time between the initial stop and the discovery of the cocaine was admittedly brief here" and that "the cocaine evidence here was not first discovered by the police until after [Owens] had committed new, distinct criminal offenses." (Appellant's Br. pp. 14, 16). The State thus concedes that the illegal stop and Owens's acts of resistance occurred within a brief time frame. For the second factor, the State alleges that Owens's crimes of flight and opposition constituted an intervening circumstance sufficiently separate from the illegal stop.

The important consideration in the third factor is whether the evidence came from the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *See Quinn*, 792 N.E.2d at 599. Here, Officer Shipley stopped Owens admittedly on a hunch and proceeded to handcuff him. Despite smelling marijuana as he approached Owens, Officer Shipley's pat-down revealed nothing. After Owens told him that he had swallowed marijuana, Officer Shipley threatened to arrest Owens if he did not admit to possessing drugs. By suppressing this evidence, the trial court apparently believed that Owens's actions resulted from the officers' exploitation of the illegal stop. As the trial court was in the best position to assess the evidence, I would uphold its suppression of evidence relating to Owens's flight from and battery of Officers Shipley and Solomon. *See People v. Felton*, 581 N.E.2d 1344, 1345 (N.Y. 1991).