

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00077-CR
### NO. 02-14-00078-CR

---

WALTER TENDAI CHIDYAUSIKU                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NOS. 1264242R, 1264243R

----------

## OPINION

----------

After the denial of his motions to suppress, Appellant Walter Tendai Chidyausiku pled guilty to intoxication assault and intoxication manslaughter, charged in separate indictments, reserving his right to appeal the denial of his motions to suppress. He pled "not true" to the deadly-weapon allegation in each case. A jury convicted him as instructed to do by the trial court, found the deadly-weapon allegation in each case true, and assessed his punishment at

three years' confinement for his conviction of intoxication assault and ten years' confinement for his conviction of intoxication manslaughter. The trial court sentenced him accordingly, with the sentences to run concurrently.[1]

In two points, Appellant challenges the trial court's denial of his motions to suppress the evidence obtained from the warrantless, mandatory, and involuntary blood draw. Because the trial court reversibly erred by denying his motion to suppress in each case,[2] we reverse the trial court's judgments and remand both causes to the trial court for a new trial or other proceedings consistent with this opinion.

**Brief Facts**

Appellant was involved in a car wreck at a four-way stop intersection in Arlington, Texas. Appellant's automobile approached the intersection at a fast speed and then failed to stop, striking the vehicle operated by Tina R. As a result of the collision, Tina suffered severe bodily injuries causing her to be hospitalized for six weeks. Additionally, the wreck resulted in the death of Tina's ten-year-old son.

The City of Arlington Fire Department and the DWI unit of the City of Arlington Police Department responded to the wreck. Officer Brian Martin spoke

---

[1] *See* Tex. Code Crim. Proc. art. 42.08(a) (West Supp. 2014).

[2] *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *20 (Tex. Crim. App. Nov. 26, 2014) (holding that implied consent statutes, "taken by themselves, [do not] form a constitutionally valid alternative to the Fourth Amendment warrant requirement").

with Appellant when he arrived on the scene and noticed that Appellant had been crying and was a bit emotional. Appellant admitted to having had two alcoholic drinks at a bar after work before the collision occurred. Appellant also told Officer Martin that he had been trying to rinse his mouth with mouthwash just before the collision to mask the smell of cigarette smoke, and may have even swallowed some mouthwash, because he was on his way to meet his son.

Officer Martin directed Appellant to perform field sobriety tests because Appellant showed signs of impairment such as poor balance, bloodshot and glassy eyes, and the smell of alcohol from his mouth. When asked about the specific results of the tests, Officer Martin testified that Appellant had scored six of six points on the horizontal-gaze-nystagmus test and four of eight on the walk-and-turn test, failing both, but that he had passed the final test by scoring zero on the one-leg stand.

As a result of those tests, Officer Martin placed Appellant under arrest for driving while intoxicated. Appellant was then transported to the Medical Center of Arlington (MCA), where he was asked to give a blood sample. He refused, so blood-draw technician Adam Tomlinson performed the blood draw without Appellant's consent while Officer Martin was present. Tomlinson worked for the MCA "as a side gig part time while [also] working on the ambulance [at Arlington EMS]." As an Emergency Department Tech II at MCA, some of Tomlinson's primary duties included "[s]tarting IVs, drawing blood, [inserting and removing] Foley catheters[,] . . . transporting patients[,] and assisting the nurses and doctors

3

in other procedures." After the sample was collected, Officer Martin transported the blood vials to the main police station and locked them in the evidence room, where they remained refrigerated. Analyst Joyce Ho tested Appellant's blood.

In both cases, Appellant filed a motion to suppress the blood evidence on the ground that it was seized without a warrant and without consent, under the auspices of transportation code section 724.012, authorizing mandatory blood draws, and triggering section 724.017, which lists those authorized to draw blood under the implied consent statutes.[3] Appellant argued in his motions to suppress that under section 724.017, a qualified technician must draw the blood, that the statute excludes emergency medical services personnel from the definition of "qualified technician," and that because Tomlinson holds an EMT paramedic license, he is included in emergency medical services personnel. Appellant also contended that the mandatory blood draw was a search, and he moved to suppress the blood evidence on the ground that the Fourth Amendment "does not permit nonconsensual blood draws in every instance," citing *Missouri v. McNeely* in his brief supporting his motion in each case.[4] The trial court denied the motions in both cases.

---

[3]Tex. Transp. Code Ann. § 724.012 (West 2011), § .017 (West Supp. 2014).

[4]133 S. Ct. 1552, 1557 (2013).

At trial, subject to Appellant's objections to the blood evidence, he and the State stipulated to the result of Ho's analysis showing that he had a blood-alcohol concentration of 0.12. Dr. Robert Johnson, Chief Toxicologist for the Tarrant County Medical Examiner's Office, testified concerning Appellant's 0.12 blood-alcohol concentration.

**Motion to Suppress**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[5] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[6]

It is well established that

[t]he Fourth Amendment (of the United States Constitution) proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.[7]

The Texas Court of Criminal Appeals instructs us that

---

[5]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[6]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[7]*Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (internal quotation marks and citation omitted).

a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment.[8]

The Supreme Court of the United States has held,

Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception. That principle applies to the type of search at issue in this case, which involved a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation. Such an invasion of bodily integrity implicates an individual's most personal and deep-rooted expectations of privacy.[9]

To be constitutionally permissible, a warrantless search must fall within one of the well-accepted exceptions to the warrant requirement.[10] We have found no exception to the warrant requirement that would justify the search in the cases now before this court. The only possible exigency suggested by the records is the natural dissipation of alcohol in Appellant's body. But, as the *McNeely* court held, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.[11] Examining the totality of the circumstances here, we

---

[8]*Villarreal*, 2014 WL 6734178, at *21.

[9]*McNeely*, 133 S. Ct. at 1558 (citations and internal quotation marks omitted).

[10]*Id.* at 1558–59; *Villarreal*, 2014 WL 6734178, at *9.

[11]*McNeely*, 133 S. Ct. at 1568.

6

see no basis to justify Appellant's blood draw on the ground of exigency.[12]  The records show that the Arlington Police Department and the Arlington judiciary, in a commendable commitment to assuring Fourth Amendment protections, have established a protocol and procedure to obtain search warrants efficiently and without undue delay.  In 2011 alone, 288 search warrants were procured.  The records reflect that this procedure, described by Officer Martin, Sergeant Steve Chow, also of the City of Arlington Police Department, and Judge Stewart Milner, the chief municipal judge of the City of Arlington, was efficient and available twenty-four hours a day, seven days a week, holidays included.  The records do not reflect any other exception to justify the search.[13]  We further point out that this court has already rejected the State's argument that the evidence should not be excluded under article 38.23.[14]  We therefore hold that the trial court erred by denying Appellant's motion to suppress the blood test results in each case.[15]

---

[12]See id.

[13]See Villarreal, 2014 WL 6734178 at *10 (rejecting implied consent, exceptions to the warrant requirement—the automobile exception, the special-needs exception, and the search-incident-to-arrest-exception, as well as the treatment of the blood draw as a seizure, not a search and employing a balancing test as justifications for mandatory blood draw).

[14]See Burks v. State, No. 02-13-00560-CR, 2015 WL 115964, at *3 (Tex. App.—Fort Worth Jan. 8, 2015, no pet. h.) (noting that "there is no exception to our statutory exclusionary rule for an officer's good faith reliance on a statute").

[15]See id. at *1, *3 (reversing trial court's order denying motion to suppress in DWI-felony repetition blood-draw case).

**Harm**

Because the denial of Appellant's motions to suppress and the admission of the fruits of the unlawful search of Appellant by means of a warrantless, non-consensual blood draw violated his Fourth Amendment constitutional rights, we perform the harm analysis mandated by rule 44.2(a) of the Rules of Appellate Procedure:

> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[16]

In each case, if the denial of the motion to suppress contributed in some measure to the State's leverage in the plea-bargaining process and may have contributed to Appellant's decision to relinquish his constitutional rights of trial and confrontation, we cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[17]  As a result, the error cannot be found harmless.  We cannot say that the denial of Appellant's motion to suppress the results of the blood test did not contribute to his decision to enter a guilty plea in each case.  Consequently, we cannot say that the erroneous denial

---

[16]Tex. R. App. P. 44.2(a).

[17]*See McKenna v. State*, 780 S.W.2d 797, 799–800 (Tex. Crim. App. 1989); *Castleberry v. State*, 100 S.W.3d 400, 404 (Tex. App.—San Antonio 2002, no pet.); *Woodberry v. State*, 856 S.W.2d 453, 458–59 (Tex. App.—Amarillo 1993, no pet.).

8

of his motion to suppress did not contribute to his conviction in each case.[18]

Because the trial court reversibly erred by denying Appellant's motion to suppress in each case, we are compelled to sustain his first point in each case. We therefore do not reach his remaining point in each case, which challenges the blood draw under section 724.017.[19]

**Conclusion**

Having held that the trial court reversibly erred by denying Appellant's motions to suppress, we reverse the trial court's judgments and remand both causes to the trial court for a new trial or other proceedings consistent with this opinion.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

GABRIEL, J., filed a concurring opinion in which LIVINGSTON, C.J., joins.

PUBLISH

DELIVERED:  February 19, 2015

---

[18]*See Burks*, 2015 WL 115964, at *3 (implicitly holding error harmful by reversing trial court's judgment and order denying motion to suppress in DWI-felony repetition blood draw case).

[19]*See* Tex. R. App. P. 47.1.