

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00069-CR

———————————————

SOHAIL RAMZAN KHAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 1
Denton County, Texas
Trial Court No. CR-2020-01188-A

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Sohail Ramzan Khan was charged by information with causing bodily injury to a family member or member of his household. Tex. Penal Code Ann. § 22.01(a)(1). After Khan pleaded guilty, the trial court imposed a term of twenty-four months' deferred-adjudication community supervision and a fine of $1,000. Khan timely filed a notice of appeal.

Khan raises two issues. In his first, he complains that the trial court violated his Confrontation Clause rights by admitting prior statements by the non-testifying complainant,[1] Khan's wife Amelia.[2] In his second, Khan complains that the trial court should not have included a finding of family violence in the judgment.

We agree with Khan that refusing to suppress the out-of-court statements was erroneous, and we hold that the error was not harmless beyond a reasonable doubt. Because of our disposition of that issue, we do not reach Khan's complaint about the family-violence finding.

---

[1]Khan raised this issue in a pretrial motion and hearing.

[2]We use an alias to protect the complainant's privacy. *See* Tex. Const. art. 1, § 30(a)(1); *Valencia v. State*, No. 02-22-00282-CR, 2023 WL 5115320, at *1 n.1 (Tex. App.—Fort Worth Aug. 10, 2023, no pet.) (mem. op., not designated for publication).

## II.  BACKGROUND

Larry Altmann owned a house in Frisco.  Amelia, who had already filed for a divorce from Khan, rented a room in that house.  On the evening of December 6, 2019, Altmann heard a "ruckus" in his garage and then saw Khan enter the house from the garage; Altmann's roommate, Jon Kol, was in the kitchen.  Khan sat down on a couch next to Altmann and demanded to know who both the men were.  The roommates did not respond to him, so Khan began checking various rooms.  Kol could hear Amelia in the garage, so he let her in.  Arriving at Amelia's room, Khan began to slam his body into the door until the doorknob broke off.  Realizing that this scene was "like a domestic assault issue," Altmann called the police.

Khan and Amelia then began a verbal altercation in Amelia's bedroom that eventually got physical.  Amelia yelled for help, and Kol ran into the room.  He witnessed Khan put Amelia in a headlock and pull her out of the bedroom closet.  Kol intervened to try and separate the two of them.  He told Amelia to stay in the closet, and he tried to keep Khan from hurting her.  The police arrived minutes later.

Khan was charged with family-violence assault.  Before trial, and knowing that Amelia would not testify, Khan moved to suppress any out-of-court testimonial statements made by Amelia.  After a hearing, the trial court denied Khan's request to suppress Amelia's statements.  Khan thereafter pleaded guilty without a plea bargain. After hearing evidence of the assault (including Amelia's statements she made to

3

police), the trial court assessed a twenty-four-month term of deferred-adjudication community supervision and a fine of $1,000.

## III. KHAN'S CONFRONTATION CLAUSE CLAIM

Amelia made several testimonial, out-of-court statements to police both before and after Khan assaulted her. Khan objected to these being admitted. After a pretrial hearing, the trial court accepted the State's argument that Khan's wrongful actions caused Amelia's absence from trial, that Khan was therefore unprotected by the Confrontation Clause, and that Amelia's statements would be admissible against him at trial. Khan argues that this ruling was mistaken. We agree. We also believe that the erroneous ruling contributed to Khan's guilty plea and therefore that he suffered harm.

### A. THE PRETRIAL HEARING

Amelia was absent the day of trial. Before trial, Khan objected to the State's plan to introduce Amelia's out-of-court statements. The State responded that—despite any Confrontation Clause or hearsay issues—Amelia's statements were admissible because Khan's threats to Amelia had induced her refusal to testify. The trial court then conducted a hearing to determine the admissibility of the statements. Three police officers and a district attorney's office investigator testified.

Officer Aaron Steensma met with Amelia and took a harassment complaint from her in November 2019. Amelia told Steensma that Khan had been harassing her the previous month—specifically, he had threatened to "kill and destroy her" after she

4

asked him for money to help pay her rent. Amelia also told Steensma that she thought Khan had been tracking her by her own telephone and that he had demanded to know why she was in an attorney's office.

After Amelia filed for divorce, she told Steensma that she feared what Khan might do and was afraid that he would physically harm her. But Steensma did not further investigate because the harassment case was then assigned to a detective.

Khan's assault of Amelia occurred on December 6, 2019. She spoke to Detective Kimberly Pruitt that day and told her that she felt Khan's actions had been "escalating" and that she had come to believe that Khan had a history of family violence in prior relationships. Amelia also told Detective Pruitt that she was afraid of Khan and that Khan had come to her house on the morning of the assault and banged on the bedroom windows.

A few days later, Officer Carney interviewed Amelia. In her statement to Officer Carney, Amelia alleged that, before the assault, Khan and his family had threatened to kill her and had also threatened her daughter. Amelia did not explain why she thought these threats had taken place.

Keith Smith, an investigator with the district attorney's office, was tasked with making sure Amelia would testify at Khan's trial. Although he created subpoenas, he was unable to serve them on Amelia. Amelia did not want to testify, and she told Smith that she was afraid of Khan and worried that Khan would retaliate against her. Smith testified that he made various efforts to get her to testify, including phoning

5

her, emailing her, and trying to subpoena her. It was especially difficult to contact her, Smith testified, because Amelia was in California taking care of her ill mother. Although Amelia told Smith that she feared Khan would retaliate, she also told him that Khan had not explicitly threatened to hurt her if she testified.

At the close of the evidence, the State argued that Khan's threats resulted in Amelia's refusing to testify and that Khan's specific intent was irrelevant to whether his threatening actions made Amelia's out-of-court statements admissible. Khan's attorney responded that—in order to justify the admission of testimonial hearsay statements made outside of court—the State should have to show that the defendant *intended* by his conduct to make the nontestifying witness unavailable. Because there was no showing of intent, he argued, the statement should be inadmissible. The trial court disagreed, ruling that Khan's threats "instilled fear" in Amelia and that her statements were therefore admissible under the "forfeiture-by-wrongdoing" exception to the Confrontation Clause.

After a break during which Khan and his attorney conferred, Khan presented the court with a signed jury waiver and explained that he understood the consequences of waiving a jury. He attempted to plead "no contest," but was reminded by the State that it would only consent to his jury waiver if he pleaded guilty. Khan did so, leaving the assessment of punishment to the trial court. After a punishment hearing, Khan's attorney argued that Khan should receive deferred-

6

adjudication community supervision for two years. The trial court agreed and sentenced Khan accordingly.

## B. THE CONFRONTATION CLAUSE AND FORFEITURE BY WRONGDOING

The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront witnesses against him. U.S. Const. amend VI; *Paredes v. State*, 462 S.W.3d 510, 514 (Tex. Crim. App. 2015). Under the Confrontation Clause, "testimonial" statements—statements that were made under circumstances that would lead an objective witness to reasonably believe they would be available for use at a later trial—are inadmissible at trial unless the witness who made them either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Paredes*, 462 S.W.3d, 514.

Where a defendant has wrongfully procured the witness's unavailability, however, that defendant is barred from asserting his right of confrontation or complaints about hearsay. *Colone v. State*, 573 S.W.3d 249, 264–65 (Tex. Crim. App. 2019). This "forfeiture-by-wrongdoing" exception applies only when the defendant has "engaged in conduct *designed* to prevent the witness from testifying." *Giles v. California*, 554 U.S. 353, 359, 128 S. Ct. 2678, 2683 (2008).

The Code of Criminal Procedure has codified the doctrine of forfeiture by wrongdoing:

> (a) A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

7

(1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

(2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

(b) Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing under this article, subject to Subsection (c).

(c) In determining the admissibility of the evidence or statements described by Subsection (b), the court shall determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. If practicable, the court shall make the determination under this subsection before trial using the procedures under Article 28.01 of this code and Rule 104, Texas Rules of Evidence.

(d) The party offering the evidence or statements described by Subsection (b) is not required to show that:

(1) the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability;

(2) the actions of the actor constituted a criminal offense; or

(3) any statements offered are reliable.

(e) A conviction for an offense under Section 36.05 or 36.06(a), Penal Code, creates a presumption of forfeiture by wrongdoing under this article.

(f) Rule 403, Texas Rules of Evidence, applies to this article. This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

Tex. Code Crim. Proc. Ann. art. 38.49.

Here, while there is evidence that Khan harassed Amelia, there is no evidence that he ever broached the subject of her testifying against him or that his actions were linked to the assault. Therefore, it cannot be said that his actions were designed to prevent Amelia's testimony.

Amelia's statements to police that she did not want to testify because she feared Khan arguably demonstrate that Khan's actions *caused* Amelia's unavailability as a witness (though there may have been other reasons). But the State must also show that this causation was *intended* by Khan. *See Brown v. State*, 618 S.W.3d 352, 358 (Tex. Crim. App. 2021) ("The State has not offered evidence that the defendant issued any threats or engaged in conduct otherwise *designed* to control Hutzelman." (emphasis added)). A trial court is, of course, entitled to infer from the evidence that a defendant's actions were intended to prevent a witness from testifying against him. *See Shepherd v. State*, 489 S.W.3d 559, 575 (Tex. App.—Texarkana 2016, pet. ref'd); *see also Barkley v. State*, No. 02-22-00081-CR, 2023 WL 2534465, at *9 (Tex. App.—Fort Worth Mar. 16, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that trial court could infer intent to cause witness's unavailability where defendant repeatedly urged witness not to testify against him). On this record, however, there is simply too little evidence from which to infer that Khan's threats (which predated the crime) were made to Amelia for the purpose of preventing her from ever testifying against him in the future. *See Davis v. State*, 268 S.W.3d 683, 702 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that although defendant had history of domestic

9

violence against victim, there was no evidence he killed her to prevent her from testifying). We reject the State's argument that Khan's intent to prevent Amelia from testifying could be reasonably deduced by his actions. Thus, the trial court abused its discretion in admitting Amelia's out-of-court statements.

## C. HARM ANALYSIS

Having concluded that Amelia's out-of-court statements were inadmissible, we must review the record to determine if the trial court's error is reversible. *See* Tex. R. App. P. 44.2. Because the wrongful admission of out-of-court statements in violation of the Confrontation Clause is constitutional, Rule 44.2(a) requires us to reverse the trial court's judgment unless we determine beyond a reasonable doubt that the trial court's error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

Where there is a denial of a motion to suppress followed by a guilty plea, however, we must determine whether the trial court's decision to admit inadmissible evidence contributed to the defendant's decision to enter a guilty plea. *Holmes v. State*, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009); *see also McKenna v. State*, 780 S.W.2d 797, 799 (Tex. Crim. App. 1989). As we have stated in another guilty-plea case:

> [I]f the denial of the motion to suppress contributed in some measure to the State's leverage in the plea-bargaining process and may have contributed to Appellant's decision to relinquish his constitutional rights of trial and confrontation, we cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment. As a result, the error cannot be found harmless.

10

*Chidyausiku v. State*, 457 S.W.3d 627, 631–32 (Tex. App.—Fort Worth 2015, pet. ref'd) (footnote omitted). Chidyausiku, like Khan, decided to plead guilty immediately after the trial court's denial of his motion to suppress. *Id.* at 634 (Gabriel, J., concurring). It is true that Khan did not bargain for a particular sentence (as did Chidyausiku), but the State agreed to consent to a jury waiver in return for Khan's guilty plea. Pleading guilty before the trial court—and hoping for deferred adjudication—would appear to be one of Khan's few options following the court's erroneous denial of his suppression motion.[3] Given this situation, and the speed at which Khan chose to plead guilty after the trial court's decision, we cannot say that the denial of Khan's suppression motion did not contribute to his decision to plead guilty to assault.[4] *See Holmes*, 323 S.W.3d at 174 ("Soon after the trial court denied their pretrial motions to permit cross-examination, the defendants changed their pleas to no contest and were found guilty by the trial court. This indicates that the trial court's erroneous ruling

---

[3]Deferred adjudication is available only to those defendants who plead guilty (or nolo contendere) before the trial court after waiving a trial by jury. *State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 647 (Tex. Crim. App. 2018); *see* Tex. Code Crim. Proc. Ann. art. 42A.101(a) ("[T]he judge may, after receiving a plea of guilty or nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt and place the defendant on deferred[-]adjudication community supervision.")

[4]The State argues in part that Khan was not convicted—the trial court placed him on deferred adjudication—and that therefore Rule 44.2(a) (which refers to "conviction or punishment") should not apply at all. We reject this argument because of Khan's guilty plea. Under our 44.2(a) analysis, it does not matter whether he was "convicted" or received deferred adjudication; the important issue is whether the trial court's decision coerced Khan to plead guilty.

was indeed a contributing factor in the defendants' convictions and punishments."); *Bell v. State*, 485 S.W.3d 663, 668 (Tex. App.—Eastland 2016, no pet.) (holding erroneous denial of motion to suppress blood-draw evidence harmful where defendant entered open plea following denial). *But cf. McCurley v. State*, 653 S.W.3d 477, 493 (Tex. App.—Fort Worth 2022, pet. ref'd) (holding erroneous denial of suppression motion followed by open plea of guilty was harmless where decision to plead guilty came six weeks after denial and after two days of testimony).

We sustain Khan's first issue.

## IV.  AFFIRMATIVE FINDING OF FAMILY VIOLENCE

In Khan's second issue, he claims that the trial court should not have included a family-violence finding in the written judgment when there was no such oral pronouncement at sentencing.  Given our disposition of Khan's first issue, we do not need to decide whether the trial court's family-violence finding was appropriate. *See* Tex. R. App. P. 47.1.

## V.  CONCLUSION

Having held that the trial court reversibly erred in overruling Khan's motion to suppress, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 18, 2024